IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 05-cv-00018-RPM

FORT PECK HOUSING AUTHORITY,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD),
SHAUN DONOVAN, Secretary of Housing and Urban Development,
SANDRA HENRIQUEZ, Assistant Secretary for Public and Indian Housing,

    Defendants
_____

FINDINGS AND CONCLUSIONS AND
ORDER FOR FINAL JUDGMENT
_____

Fort Peck Housing Authority ("Fort Peck" or "the Tribe") is entitled to declaratory and injunctive relief pursuant to this Court's Memorandum Opinions and Orders dated August 31, 2012 and March 7, 2014, and the following findings and conclusions.

This action arises under Administrative Procedure Act, 5 U.S.C. § 701 et seq., and the Native American Housing Assistance and Self-Determination Act ("NAHASDA") 25 U.S.C. § 4101 et seq.  The issues presented are governed by the version of NAHASDA that existed before it was amended by the Native American Housing Assistance and Self-Determination Reauthorization Act of 2008, Pub. L. No. 110-411, 122 Stat. 4319 (2008).

Jurisdiction is provided by the APA and by 28 U.S.C. §§ 1331, 1346 and 1362.  The Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. § 2201, and jurisdiction to

grant injunctive relief pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 2202.

The Administrative Record was filed on March 8, 2006. That record reflects that in a letter dated September 21, 2001, HUD questioned whether 238 Mutual Help units included in Fort Peck's Formula Current Assisted Stock ("FCAS") during fiscal years 1998-2001 should have been eligible for funding under the FCAS component of the Indian Housing Block Grant ("IHBG") formula.[1] Citing 24 C.F.R. § 1000.318, HUD asserted that those units were no longer eligible for consideration at part of the Tribe's FCAS, based on the units' dates of full availability. In a letter dated December 20, 2001, HUD informed Fort Peck that the Tribe had received grant overfunding for those units in the estimated amount of $1,298,354 and stated, "We will work with your Tribe to find a suitable way to restructure repayment."[2]

Fort Peck initially did not contest HUD's demands for repayment of the alleged grant overfunding. In February 2002, Fort Peck paid HUD the sum of $251,687, which HUD credited as repayment for funds "over-allocated to the Tribe in FY 1998."[3]

In a letter dated May 30, 2002, HUD informed Fort Peck that the Tribe had received grant overfunding in the amount of $468,922, in addition to the overfunded amount of $1,298,354.[4]

In June 2002, Fort Peck paid $261,667 to HUD for alleged grant overfunding.[5]

---

[1]Administrative Record ("AR"), Tab 15 at US000215-16.

[2]AR Tab 18 at US000240-42.

[3]AR Tab 20 at US000248.

[4]AR Tab 25 at US000300-03.

[5]*See* AR Tab 26 at US000305; *see also* AR Tab 28 at US000342-43.

In a letter July 31, 2002, HUD stated that the total amount of the grant overfunding received by Fort Peck was $1,767,276 and recognized that the Tribe had made two repayments totaling $513,354.  HUD continued to seek repayment of $1,253,922.[6]

Aided by counsel, Fort Peck disputed HUD's determinations about the Tribe's housing stock.  Fort Peck also questioned HUD's interpretation and application of its regulations and HUD's process for resolving FCAS disputes.[7]

In a letter dated December 8, 2003, HUD revised and reduced its calculation of the alleged overfunding to $504,760, which took into account Fort Peck's two previous payments.[8] HUD's letter advised Fort Peck that repayment options included "reducing previous and/or future year's funding."[9]

Fort Peck requested reconsideration of HUD's determinations about the alleged overfunding.  In a letter dated March 26, 2004, HUD Assistant Secretary Michael Liu rejected Fort Peck's arguments and stated that his decision was "the agency's final action on this issue."[10]

On January 6, 2005, Fort Peck filed this APA action, challenging HUD's March 26, 2004 determination.  Fort Peck claimed that HUD's interpretation and application of 24 C.F.R. § 1000.318 conflicted with 25 U.S.C. § 4152(b).  Alternatively, Fort Peck claimed that HUD had

---

[6] AR Tab 28 at US000342-43.

[7] *See, e.g.,* AR Tab 33 at US000370-78; Tab 36 at US000390-93.

[8] AR Tab 42 at US000490-98. HUD later corrected that amount to $504,750, recognizing a mathematical error.  *See* AR Tab 45 at US 000515.

[9] AR Tab 42 at US000498.

[10] AR Tab 46 at US000531-34.

violated the NAHASDA regulatory scheme by not providing a hearing before it determined that Fort Peck had received grant overpayments and that HUD lacked authority to recover grant overpayments. Fort Peck sought declaratory and injunctive relief requiring HUD to return recaptured funds and prohibiting HUD from implementing threatened recaptures.

On May 26, 2006, this Court entered judgment in favor of Fort Peck, declaring 24 C.F.R. § 1000.318 invalid. The Court rejected Fort Peck's request to amend the judgment to require restoration of the recaptured funds.

HUD appealed the judgment, and Fort Peck cross-appealed this court's denial of Fort Peck's request for monetary relief.

In an Order and Judgment issued on February 19, 2010, the Tenth Circuit reversed this Court's judgment and upheld the validity of 24 C.F.R. § 1000.318. *Fort Peck Housing Auth. v. HUD*, 367 Fed.Appx 884 (10th Cir. 2010) ("*Fort Peck II*"). The Tenth Circuit dismissed Fort Peck's cross–appeal, stating in a footnote: "Because HUD's actions did not violate Congress's mandate, the issues raised in Fort Peck's cross-appeal are moot." *Id.* at 892, n.15.

After remand, Fort Peck filed a supplemental complaint and this action proceeded on a coordinated basis with other similar actions, with rounds of briefing on common legal issues. In Opinions and Orders dated August 31, 2012, and March 7, 2014, this Court held that HUD's recapture of IHBG grant funds without first providing the administrative hearing required by NAHASDA was arbitrary, illegal and in contravention of the pre-amendment versions of 25 U.S.C. §§ 4161 and 4165; that HUD must restore to the plaintiffs all funds that were illegally recaptured for fiscal years through and including FY 2008, and that HUD must refrain from threatening recapture or acting upon any threatened recapture with respect to grant funds

awarded for any fiscal year through fiscal year 2008. The plaintiffs were directed to submit proposed forms of judgment, specifying the amounts to be paid to each Tribe and the asserted sources of payment.

Fort Peck submitted its proposed judgment on April 15, 2014, seeking restoration of $513,344 and injunctive relief.[11] It is assumed that Fort Peck has abandoned claims to any form of relief not identified in its proposed judgment.

HUD argues that the monetary relief requested by Fort Peck is precluded by the Tenth Circuit's opinion in *Fort Peck II*. There is no merit to that argument. The Tenth Circuit's order and judgment addressed only the validity of 24 C.F.R. § 1000.318. There is no Circuit "law of the case" with respect to Fort Peck's procedural claims. The Tenth Circuit's dismissal of Fort Peck's cross-appeal on the ground of mootness cannot be interpreted as an implicit determination that HUD acted lawfully when it recaptured $513,354 from Fort Peck. This Court already has rejected HUD's arguments about the scope of the Tenth Circuit's opinion.

HUD argues that Fort Peck cannot show that it was prejudiced by the lack of a hearing, stating that the recaptures challenged by Fort Peck were based in part on the Tribe's reports to HUD showing that 15 of the disputed units had been conveyed between 1998 and 2001.

Fort Peck responds that the Administrative Record does not support HUD's contention that any of the recaptured funds were attributable to amounts that HUD overpaid for conveyed units. Fort Peck contends that the recaptured amount should be attributed to fiscal years 1998

---

[11] Fort Peck's proposed judgment seeks $513,344 for restoration of recaptured grant funds. As described above, Fort Peck made two payments to HUD in the amounts of $251,687 and $261,667, for a total recapture of $513,354.

and 1999 and states that the 15 units were not conveyed until after the FCAS reporting periods for those fiscal years.

Disputes about the dates of conveyances and the FCAS eligibility of particular units are matters that should have been resolved at the hearing that HUD should have provided.  As discussed in this Court's order dated August 31, 2012, HUD misapplied 24 C.F.R. § 1000.318 when it rejected the Tribes' valid justifications for continued ownership of units beyond their 25-year lease/purchase periods.  It is not possible now to determine how the recaptured grant funds correlate to conveyed units, as opposed to other units that Fort Peck continued to own or operate, and it is fair to attribute the recaptured amount ($513,354) to eligible units.  It was incumbent upon HUD to follow the NAHASDA's procedural requirements, and the agency's failure to do so was itself prejudicial.

The findings and conclusions set forth above resolve the issues presented by the Defendants' motion for scheduling order [#11] and the Plaintiff's motion to strike [#126].

Based on the foregoing, it is

ORDERED that the Defendants' motion for scheduling order [#11] is moot; and it is

FURTHER ORDERED that the Plaintiff's motion to strike [#126] is moot; and it is

FURTHER ORDERED that the Defendants shall restore to Plaintiff Fort Peck Housing Authority the amount of  $513,354, for Indian Housing Block Grant ("IHBG") funds that were recaptured illegally from the Plaintiff for fiscal years 1998 through 2002.  Any such restoration shall be in addition to the full IHBG allocation that would otherwise be due to the Plaintiff under the Native American Housing Assistance and Self-Determination Act ("NAHASDA") in a given fiscal year as calculated without application of the amount of the Judgment; it is

FURTHER ORDERED that Defendants shall make restoration of the IHBG funds from all available sources, including, but not limited to, IHBG funds carried forward from previous grant years and IHBG funds appropriated in future grant years; it is

FURTHER ORDERED that the restoration of funds to the Plaintiff shall be completed as soon as administratively feasible, but in no event later than eighteen (18) months from the date of Judgment; it is

FURTHER ORDERED that with respect to grant funding for fiscal years through and including 2008, the Defendants shall refrain from threatening or implementing any recapture of IHBG funds from the Plaintiff and shall not act upon any threatened recapture without first complying with the requirements of Section 401(a) of the NAHASDA [25 U.S.C. § 4161(a)] as that subsection existed prior to the effective date of Public Law 110-411, and it is

FURTHER ORDERED that the Clerk shall enter judgment providing relief to the Plaintiff as set forth above and awarding the Plaintiff its costs upon the filing of a Bill of Costs pursuant to D.C.COLO.LCivR 54.1.

Date: August 6, 2014

BY THE COURT:

s/Richard P. Matsch

Richard P. Matsch, Senior District Judge